[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17471
Non-Argument Calendar
_____

D.C. Docket No. 2:06-cr-00117-JES-MRM-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL TERRILL FAIRCLOTH,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 18, 2017)

Before ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Michael Terrill Faircloth appeals his conviction for possession of ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He argues that the district court abused its discretion in denying his motion to withdraw his guilty plea. Faircloth asserts that he did not knowingly plead guilty because he was repeatedly "misadvised" about a sentence of 15 years to life that he faced under the Armed Career Criminal Act ("ACCA"). After careful consideration, this Court affirms Faircloth's conviction.

## I.    BACKGROUND

### A. Facts

In October 2006, a federal grand jury indicted Faircloth for possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The indictment listed 11 instances in which Faircloth had been convicted of felonies in Florida. Faircloth entered a plea agreement, which stated that he faced a mandatory minimum term of imprisonment of 15 years to life for his offense. It further stated that for the § 924(e) armed-career-criminal sentencing enhancement to apply, Faircloth must have had three prior convictions for a violent felony or serious drug offense.

The government agreed to recommend a sentence within the guideline range, not to oppose a downward adjustment for acceptance of responsibility, and to consider moving for a downward departure for substantial assistance. Faircloth

2

acknowledged in the agreement that he was agreeing to plead guilty voluntarily with an understanding of the nature of the offense and penalties and that he was satisfied with his representation. The agreement also included a factual basis stating that (1) Faircloth was in fact guilty of the charge in the indictment; (2) he had prior Florida felony convictions for second-degree grand theft, felonious firearm possession, escape, armed trespass on property, being a felon in possession of a firearm, carrying a concealed weapon, burglary of a structure, grand theft, resisting arrest with violence, and felony fleeing; (3) in November 2005, a police officer removed Faircloth from a stolen car, arrested him, conducted a search incident to arrest, and found in his left front jeans pocket six rounds of ammunition manufactured out of state, a knife, and glass tubes consistent with crack pipes; and (4) the ammunition was manufactured out of state.

A magistrate judge held a change-of-plea hearing in May 2007. Faircloth said under oath that he finished high school, had some college, and was still going to school; he worked as a paralegal; he was not suffering from any health issue and was not taking any medication that would interfere with his ability to think, concentrate, or understand the proceedings; he spoke and read English; he had been under the care of a psychologist or psychiatrist for only anxiety; and he had been addicted to drugs, alcohol, and medication, but he had not taken illegal substances or had alcohol for 18 months. He further said that he had read the

3

charges and understood them, had discussed the charges with his attorney, and was satisfied with his representation. He stated that he wanted to plead guilty because he was in fact guilty and that he had not been threatened or coerced to plead guilty. He confirmed that he had read his plea agreement, discussed it with his attorney, and understood it. He said he understood that he could not withdraw his guilty plea if the court did not follow the plea agreement's sentencing recommendations.

During the hearing, the magistrate judge advised Faircloth several times that his offense was punishable by a mandatory minimum term of imprisonment of 15 years and a maximum term of life imprisonment. Faircloth stated that he understood he could not withdraw his guilty plea if his attorney's predictions about his guideline range or sentence proved inaccurate. He said he understood the possible penalties. He also said he understood that, by pleading guilty, he was waiving his right to plead not guilty and go to trial and the various rights he would have at trial. He confirmed that he understood the elements of his offense. Faircloth admitted that he knew he had six rounds of ammunition in his pocket when an officer arrested him in November 2005 and that his plea agreement accurately listed his prior felony convictions. After this colloquy, Faircloth pled guilty.

The magistrate judge prepared a report and recommendation recommending that the district court accept the guilty plea. Faircloth waived the objection period,

4

and the district court adopted the recommendation.  The presentence investigation report ("PSI") determined that Faircloth's enhanced base offense level as an armed career criminal was 33, under U.S.S.G. § 4B1.4(b)(3)(B).  The probation officer applied a total 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in an enhanced offense level of 30.  But for his armed-career-criminal enhancement, Faircloth's total offense level would have been 21.  Faircloth's 17 criminal-history points put him in criminal-history category VI.  Based on his total offense level of 30 and criminal-history category of VI, the probation officer calculated Faircloth's guideline range as 168–210 months' imprisonment.    Because the mandatory minimum sentence of 15 years' imprisonment was higher than the low end of the guideline range, the probation officer determined that Faircloth's guideline range was 180–210 months' imprisonment.

The district court held a sentencing hearing in September 2007.  The court adopted the PSI's factual statements and guideline applications and granted a four-level downward departure for substantial assistance, which reduced Faircloth's total offense level to 26 and his guideline range to 120−150 months' imprisonment.  The court denied a motion for a downward variance and sentenced Faircloth to 120 months' imprisonment and 5 years' supervised release.  Faircloth did not directly appeal his sentence.

In March 2016, after the Supreme Court held in *Johnson v. United States*, 135 S. Ct. 2551 (2015), that the residual clause of the ACCA was unconstitutionally vague, Faircloth filed a pro se § 2255 motion to vacate his sentence or, in the alternative, to withdraw his guilty plea. The district court found that Faircloth's sentence had been unconstitutionally enhanced under the ACCA from a maximum 10-year prison sentence to a minimum 15-year prison sentence and that the court had sentenced Faircloth using an incorrect base offense level. Accordingly, the court granted Faircloth's § 2255 motion, vacated the underlying criminal judgment, and set the case for resentencing.

In September 2016, before resentencing, Faircloth moved to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B), arguing that he did not knowingly plead guilty because he was repeatedly "misadvised" that he faced a sentence of 15 years to life, rather than a maximum of 10 years' imprisonment. He asserted that he would have gone to trial if he had known that his maximum sentence was only 10 years. Faircloth acknowledged that he had legal counsel who correctly advised him about the law as it existed when he pled guilty, but he nevertheless contended that he was "misadvised." Faircloth further argued that, because a trial would take no more than two days and he would stipulate that he was a convicted felon and that he was found in possession of ammunition that had moved through interstate commerce, withdrawing his guilty

plea would not cause the court to expend significant resources or the government to suffer harmful prejudice.  Finally, Faircloth cited *United States v. Dominguez Benitez*, 542 U.S. 74 (2004), and argued that he would have gone to trial but for his understanding that he faced a more severe penalty.  Faircloth submitted an affidavit stating that, if he had been advised that he faced a maximum of 10 years' incarceration instead of 15 years to life in prison, he would have proceeded to trial.

## B. Procedural History

The district court denied Faircloth's motion, concluding for several reasons that he had not shown a fair and just reason to withdraw his guilty plea.  First, the court observed that a substantial delay occurred between Faircloth's guilty plea and his motion to withdraw his plea, and the only basis for the motion was a decrease in the statutory maximum.  Second, it concluded that Faircloth had the close assistance of counsel before and during his change-of-plea and sentencing hearings, where his criminal history was discussed at length.  Third, it reasoned that the plea colloquy established that Faircloth's plea was knowing and voluntary and that the law was then clear that the ACCA enhancement applied.  Finally, the court determined that granting the motion would prejudice the government because the government would have to prosecute the case a decade after the relevant events.

7

After denying Faircloth's motion, the district court resentenced Faircloth to 41 months' imprisonment. Faircloth now appeals his conviction and sentence.

## II.    DISCUSSION

On appeal, Faircloth argues the district court abused its discretion in denying his motion to withdraw his guilty plea. We review for abuse of discretion a district court's denial of a request to withdraw a guilty plea . *United States v. Izquierdo*, 448 F.3d 1269, 1276 (11th Cir. 2006). A court does not abuse its discretion unless the denial is "arbitrary or unreasonable." *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006) (quotation omitted). Among rulings falling into this category, failure to apply the proper legal standard or to follow proper procedures in making the determination, or making findings of fact that are clearly erroneous constitute an abuse of discretion. *Izquierdo*, 448 F.3d at 1276. The defendant carries the burden on a motion to withdraw a guilty plea. *Id*. This Court reviews for plain error arguments that were not raised before the district court. *United States v. Evans*, 478 F.3d 1332, 1338 (11th Cir. 2007). Cursory arguments raised for the first time in a reply brief are deemed abandoned. *United States v. Thomas*, 242 F.3d 1028, 1033 (11th Cir. 2001).

Before accepting a guilty plea, Rule 11 requires that a district court address a defendant personally in open court, inform the defendant of, among other things, the maximum possible penalty and any mandatory minimum penalty, and

8

determine that the defendant's plea is knowing and voluntary. Fed. R. Crim. P. 11(b)(1), (2). To be knowing and voluntary, a guilty plea must satisfy the three core concerns of Rule 11 that the plea must be free from coercion, the defendant must understand the nature of the charges, and the defendant must know and understand the consequences of his guilty plea. *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999). There is a strong presumption that statements a defendant makes during a plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). A defendant who seeks reversal of his conviction after a guilty plea on the grounds that the district court committed plain error under Rule 11 must show a reasonable probability that, but for the error, he would not have pled guilty. *Dominguez Benitez*, 542 U.S. at 83. "Plain error" is "(1) error, (2) that is plain, and (3) affects substantial rights." *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (citation and quotation marks omitted). To affect "substantial rights," an error must have been prejudicial, and it must have affected the outcome of the district-court proceedings. *U.S. v. Olano*, 507 U.S. 1772 (1993). It a defendant establishes all three of these requirements, we may then "exercise [our] discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation and quotation marks omitted).

While pre-sentence motions to withdraw should be liberally construed, a defendant enjoys no absolute right to withdraw a guilty plea. *United States v. Buckles*, 843 F.2d 469 (11th Cir. 1988). A defendant may withdraw a guilty plea after the court accepts the plea but before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). To determine whether a defendant has met this burden, the district court may consider the totality of the circumstances surrounding the plea, including factors such as whether (1) close assistance of counsel was available, (2) the plea was knowing and voluntary, (3) judicial resources would be conserved, and (4) the government would be prejudiced if the defendant were allowed to withdraw his plea. *Brehm*, 442 F.3d at 1298. "[T]he longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal." *Id*. (quotation omitted). When a defendant received close and adequate assistance of counsel and entered a knowing and voluntary guilty plea, the court need not consider the remaining factors. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987).

A change in the law that lowers a defendant's maximum penalty below what he was advised at the time of his plea does not retroactively invalidate an otherwise knowing and voluntary guilty plea. *United States v. Sanchez*, 269 F.3d 1250, 1285 (11th Cir. 2001) (en banc), abrogated on other grounds by *United States v. Duncan*,

10

400 F.3d 1297, 1308 (11th Cir. 2005).  A guilty plea is not invalid merely because a defendant relied on then-applicable penalties when entering his plea and states that he would not have pled guilty had he known that later judicial decisions would lower the penalties.  *Brady v. United States*, 397 U.S. 742, 749–50, 757 (1970).

When assessing prejudice to the government, the district court may consider "the time, money, and effort the government would have to devote to reassembling witnesses and evidence that were allowed to scatter after the acceptance of the guilty plea." *Buckles*, 843 F.2d at 474.

Here, as an initial matter, Faircloth's cursory argument that the circumstances surrounding his plea were "suspicious" is abandoned because he did not raise it in his opening brief and did not explain in his reply brief what was "suspicious" about his plea.  *Thomas*, 242 F.3d at 1033.  Further, because Faircloth did not expressly identify the "voluntariness" of his plea as an issue in his opening brief or before the district court, he arguably abandoned and waived that issue.  *Id*.; *Evans*, 478 F.3d at 1338.  However, because Faircloth argues that his plea was not "voluntary" for the same reasons it was not "knowing," and these arguments should be rejected for the same reasons, this Court may decide to reach the merits of his "voluntariness" arguments.  Additionally, even though Faircloth has completed his sentence, this appeal is not moot because his conviction may result in collateral consequences.  *Sibron v. New York*, 392 U.S. 40, 57 (1968) ("[A]

11

criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."). For example, if this Court overturned his conviction, Faircloth might seek credit for time served against other sentences.

The district court did not abuse its discretion in denying Faircloth's motion to withdraw his guilty plea. First, the district court did not abuse its discretion in concluding that Faircloth had the close assistance of counsel before, during, and after he pled guilty. Faircloth was represented at his change-of-plea and sentencing hearings, and Faircloth confirmed at the plea colloquy that he had discussed his plea with his attorney and was satisfied with his representation.

Second, the district court did not abuse its discretion in concluding that Faircloth's plea was knowing and voluntary. Faircloth's statements under oath at the plea colloquy, which the court was entitled to rely on, confirmed that (1) he understood English, had no mental-health issues, and had completed high school and some college; (2) he wanted to plead guilty because he was in fact guilty, and he had not been threatened or coerced to do so; (3) he had discussed the charges and plea agreement with his attorney and understood them; and (4) he understood that he faced 15 years' to life imprisonment, and that he could not withdraw his guilty plea if his attorney's predictions about his guideline range or sentence proved inaccurate. *Mosley*, 173 F.3d at 1322; *Medlock*, 12 F.3d at 187.

12

Faircloth concedes that he was correctly advised about potential penalties under then-applicable law. Precedent from the Supreme Court and this Court forecloses his argument that being "misadvised" in light of later changes in the law retroactively invalidated his plea. *Brady*, 397 U.S. at 749–50, 757; *Sanchez*, 269 F.3d at 1285. While Faircloth argues that *Brady* involved a collateral attack on a conviction rather than a direct appeal after a conviction had been set aside, *Brady* did not turn on that distinction, and Faircloth fails to explain why it matters. Although Faircloth may have elected to go to trial rather than plead guilty if he had known that he faced less severe penalties under later changes in the law, this fact is insufficient to show that his plea was not knowing and voluntary at the time he entered it. *Brady*, 397 U.S. at 749–50, 757; *Sanchez*, 269 F.3d at 1285. Faircloth's reliance on *Dominguez Benitez* is misguided. *Dominguez Benitez* concerned the showing a defendant must make to demonstrate that a plain error under Rule 11 affected his substantial rights. But here, Faircloth has not shown a Rule 11 error. 542 U.S. at 83.

Because the district court did not abuse its discretion in concluding that Faircloth had the close assistance of counsel and entered a knowing and voluntary guilty plea, the district court was not required to address the remaining factors. *Gonzalez-Mercado*, 808 F.2d at 801. Nevertheless, the district court did not abuse its discretion in concluding that withdrawing Faircloth's guilty plea would

13

prejudice the government.    While Faircloth's willingness to stipulate to certain elements would likely lessen the resulting prejudice, the government would have still needed to prove that Faircloth *knowingly* possessed the ammunition in question.   Though it is difficult to conceive of how Faircloth could not have known that ammunition was in his own front jeans pocket, a substantial, more-than-eight-year delay occurred between Faircloth's plea and his motion to withdraw it. *Brehm*, 442 F.3d at 1298.  We therefore cannot say that the district court erred in considering that the government would have had to reassemble its case long after the relevant events, after witnesses' memories have likely faded, and after evidence may have been "allowed to scatter."  *Buckles*, 843 F.2d at 474.

Finally, the district court did not, and was not required to, consider whether withdrawing the guilty plea would cause the court to expend judicial resources. *Gonzalez-Mercado*, 808 F.2d at 801.

## III.   CONCLUSION

Accordingly, the district court did not act arbitrarily or unreasonably in concluding that Faircloth failed to show a fair and just reason for withdrawing his guilty plea.  Fed. R. Crim. P. 11(d); *Brehm*, 442 F.3d at 1298.  This Court should affirm his conviction.

**AFFIRMED.**

14